IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

RAYELMER ORSBORN,

                Plaintiff,

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

CV 12-13-M-DLC-JCL

FINDINGS AND
RECOMMENDATION OF
UNITED STATES MAGISTRATE
JUDGE

_____

Plaintiff Rayelmer Orsborn brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision by the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

Orsborn protectively filed his application for benefits on June 26, 2009, alleging he has been disabled since January 19, 2008, due to post traumatic stress disorder (PTSD), neuropathy, stroke, heart problems, and difficulty concentrating, breathing, and walking. Tr. 175-76, 196. Orsborn's application was denied

PAGE 1

initially and on reconsideration. Tr. 117-19, 122-24, 128-29. After an administrative hearing at which Orsborn appeared with counsel, an Administrative Law Judge found he was not disabled within the meaning of the Act "at any time from January 19, 2008, the alleged onset date, through March 30, 2009, the date last insured." Tr. 12-21. The Appeals Council denied Orsborn's subsequent request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 1-3. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

To qualify for disability insurance benefits, Orsborn had to establish that he was disabled on or before March 30, 2009, the date he was last insured for disability purposes. In other words, Orsborn had to establish that his impairments prevented him from performing any substantial gainful activity for twelve consecutive months beginning on or before that date. *See Flaten v. Sec'y. Health and Human Servs.*, 44 F.3d 1453, 1460 (9th Cir. 1995); *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991).

Orsborn was 48 years old at the time of his January 2008 alleged onset date and 49 years old when his insured status expired in March 2009.

I.   **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's

PAGE 2

decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically

PAGE 3

determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §

404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

Following the steps in the sequential evaluation process, the ALJ first found that Orsborn met the insured status requirements of the Act through March 30, 2009, and had not engaged in substantial gainful activity since his January 19, 2008, alleged onset date. Tr. 49. The ALJ found at step two that Orsborn suffered from the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, hearing loss, COPD, dysthymic disorder, and personality disorder with antisocial, borderline and histrionic features." Tr. 14. At step three, the ALJ determined that Orsborn did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. Tr. 14. The ALJ also found that while Orsborn's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms" were not entirely credible. Tr. 17. Having done so, the ALJ next determined that Orsborn retained the residual functional capacity to perform a limited range of light work. Tr. 16.

PAGE 5

Although the ALJ found that Orsborn could not return to her past relevant work, he concluded at step five that there remained a significant number of jobs in the economy that he could perform, including work as a parking lot attendant, paper inserter, or flagger. Tr. 20.

Orsborn challenges the ALJ's decision on several grounds.

A.   **Listed Impairments**

Orsborn argues the ALJ ignored evidence showing that he satisfied the criteria for presumptive disability under Listing 3.02A for chronic obstructive pulmonary disease.

At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. P. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d).

To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration

PAGE 6

to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).  The "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001).  Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment.  *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Listing 3.02A provides for presumptive disability based on "[c]hronic obstructive pulmonary disease, due to any cause, with the FEV1 equal to or less than the values specified in table I corresponding to the person's height without shoes." 20 C.F.R. Pt 404, Subpt. P, app. 1, § 3.02A.  Orsborn has consistently measured 70 inches tall.  See e.g. Tr. 871, 955.  Table I requires that a person of that height have a forced expiratory volume (FEV1) equal to or less than 1.55.

Orsborn argues he meets this requirement because on May 26, 2008, he had a FEV1spirometry reading of 1.48.  Tr. 512.  The Commissioner concedes that, at first glance, this particular spirometry reading "does appear to meet the applicable requirements of § 3.02A." Dkt. 17, at 6.  As the Commissioner points out, however, the listing specifies that the spirometry results that are used "should represent the largest of at least three satisfactory forced expiratory maneuvers." 20 C.F.R. Pt 404, Subpt. P, app. 1, § 3.00E.  At least two of the spirometric values

PAGE 7

should be reproducible. "A value is considered reproducible if it does not differ from the largest value by more than 5 percent or 0.1 L." 20 C.F.R. Pt 404, Subpt. P, app. 1, § 3.00E.

Orsborn has not shown that the single spirometry reading he relies on satisfies these requirements. For one thing, there is no indication that the 1.48 FEV1 value he cites was the largest of three satisfactory expiratory maneuvers. Nor is there any indication that those test results were reproducible, as defined by § 3.00E. Other spirometry test results in the record were consistently above the FEV1 level required by § 3.02A. In May 2009, for example, Orsborn had an FEV1 of 1.95, and 2.24 in July 2009. Tr. 419, 510. And as the ALJ noted, spirometry testing in November 2011 showed that Orsborn's pulmonary functioning had improved even more to 3.28. Tr. 17, 1058.

The ALJ permissibly found based on his review of these records that Orsborn's COPD was not of listing-level severity. Tr. 15. The ALJ's step three analysis is supported by substantial evidence, and free of legal error.

### C. Credibility

Orsborn next argues the ALJ did not provide sufficiently clear and convincing reasons for finding him less than entirely credible.

In considering a claimant's credibility with regard to subjective symptom

PAGE 8

testimony an ALJ must perform a two-stage analysis: (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). The *Cotton* test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) and *Cotton*, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the *Cotton* test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to the severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284. However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*quoting Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

PAGE 9

Here, the ALJ found that Orsborn suffers from several severe impairments that can reasonably be expected to produce some degree of symptom. Orsborn has thus made a showing sufficient to meet both prongs of the *Cotton* test.

The ALJ acknowledged Orsborn's subjective complaints regarding the disabling extent of his symptoms and limitations, but found him only partially credible for a number of reasons. Although the ALJ did not formally find that Orsborn was malingering, he discussed evidence of record showing that he overstated his limitations. Tr. 18. For example, the ALJ noted that while Osborn complained of right shoulder pain during a VA exam in March 2008, he had not received treatment for shoulder pain since 1991 and x-ray results were normal. Tr. 18, 450, 1275. The VA examiner found that Orsborn "exaggerated the lack of use of this shoulder, and was observed able to move the shoulder while putting on his shirt after the examination." Tr. 1275. The examiner believed that Osborn had "full range of motion" but "would not demonstrate it during the examination." Tr. 1275. The ALJ permissibly found that inconsistencies like these undermined Orsborn's credibility.

The ALJ also found that some of Orsborn's statements to his doctors were not supported by the medical records. In particular, the ALJ observed that upon seeking medical care in January 2010 at the VA medical clinic in Spokane,

PAGE 10

Orsborn "complained of chest pain, shortness of breath, and recent stress due to the death of his mother" and "stated that he had experienced a heart attack two years prior and had been treated by VA staff at the same clinic." Tr. 18. But after reviewing the records, the attending physician found no evidence of any prior treatment at the facility for heart attack or any consultation to cardiology. Tr. 18, 1071. The ALJ permissibly found that this suggested Orsborn's complaints of heart problems were not entirely credible.

The ALJ also found that Orsborn was not entirely credible based in part on an April 2008 report by VA examiner, Dr. David Giffen. Tr. 18-19. The VA had previously granted Orsborn a 100% disability rating for service-connected post traumatic stress disorder. Tr. 1281. Because Orsborn's "last compensation and pension exam on the issue of PTSD [had taken] place in 1999," Dr. Giffen was tasked with evaluating "his symptoms and functioning since that time." Tr. 1281. As the ALJ observed, Dr. Giffen "found many inconsistencies with [Orsborn's] reporting of the events that seemingly led to his diagnosis of PTSD." Tr. 18-19. Dr. Giffen determined that Orsborn had in fact "repeated a demonstrably false history of military combat in a number of different theaters" and had "a long history of embellishing or inventing symptoms, psychologically, neurologically, and physically." Tr. 1290.

PAGE 11

Orsborn claimed to have had combat exposure in Vietnam, Panama, Granada, El Salvador, and Korea. Tr. 1282. But Orsborn's records showed that he joined the service after the Vietnam war had ended, and was stationed in Korea while no combat activities were going on. Tr. 1282. And while Orsborn "reported that he participated in body recovery in El Salvador after the Jonestown mass suicide," Dr. Giffen noted that the Jonestown mass suicide took place in Guyana. Tr. 1282. Dr. Giffen found nothing in Orsborn's "claims file to indicate he served in either Guyana or El Salvador." Tr. 1282. In light of Orsborn's "demonstrably false history of military combat" Dr. Giffen concluded that "a diagnoses of PTSD [could] not be rendered" and instead diagnosed him with a "[d]ysthymic disorder by history" and "[p]ersonality disorder not otherwise specified." Tr. 1290-91. The ALJ permissibly relied on Dr. Giffen's report, and the inconsistencies noted therein, when assessing Orsborn's veracity.

These constitute sufficiently clear and convincing reasons for finding Orsborn less than entirely credible.

### B. VA Disability Rating

Orsborn next argues that the ALJ erred by failing to discuss or give any reasons for rejecting the total disability rating assigned him by the Department of Veterans' Affairs (VA). On this point, Orsborn is correct.

It is well-established in the Ninth Circuit that the ALJ must consider a VA disability rating. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694-95 (9th Cir. 2009). In doing so, the ALJ must "ordinarily give great weight to a VA determination of disability" due to "the marked similarity between these two federal disability programs." *McCartey*, 298 F.3d at 1076. Nevertheless, while "the ALJ must consider the VA's finding in reaching his decision," he is not bound "to reach an identical result." *McCartey*, 298 F.3d at 1076. Because the VA's criteria for determinating disability are different from those employed by the SSA, "the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCarty*, 298 F.3d at 1076.

The Ninth Circuit's *McCartey* decision is consistent with the Social Security Administration's (SSA) subsequent policy interpretation rulings. *See* SSR96-03p, 2006 WL 2329939. As the SSA explains, "[b]ecause the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner," the agency is "not bound by disability decisions by other governmental and nongovernmental agencies," including the VA. SSR 96-03p *7. While the ALJ need not reach the same result, he should

PAGE 13

nevertheless "explain the consideration given" to another agency's disability determination in the notice of decision. SSR 96-03p *7.

Approximately two weeks after Dr. Giffen examined Orsborn, the VA issued a rating decision continuing Orsborn's total disability rating. Tr. 259-66. The rating decision states that "[t]he evaluation of dysthmic disorder (previously rated as post-traumatic stress disorder) is continued as 100 percent disabling." Tr. 261. The VA continued Orsborn's 10% disability ratings for right shoulder-hand syndrome, muscle contraction headaches, and tinnitus. Tr. 259-60. The VA also continued Orsborn's 20% disability rating for right shoulder-hand syndrome, and increased his disability rating for bilateral hearing loss to 10%. Tr. 259.

Notwithstanding the Ninth Circuit's directive in *McCarty*, the ALJ did not mention or discuss this VA disability determination anywhere in his written decision. Tr. 12-21. The VA concluded that Orsborn was totally disabled as the result of his dysthymic disorder. Tr. 261. The ALJ agreed that Orsborn had a severe dysthymic disorder, but did not accept that the disorder was completely disabling. Tr. 14. While the ALJ was not required to accept the VA's conclusion to the contrary, he could not disregard it without mention. The standard set forth by the Ninth Circuit in *McCarty* is clear. If an ALJ decides to disregard the VA's disability determination, he must explain his reasons for doing so. *McCarty*, 298

F.3d at 1076. The ALJ in this case did not even mention the fact that the VA had awarded Orsborn a 100% disability rating based on his dysthymic disorder, let alone provide any reasons for rejecting the agency's assessment. Tr. 17-28.

The Commissioner does not directly address this oversight. He simply argues that "the fact that the VA chose to continue [Orsborn's] disability upon the basis of mental impairment *under its rules* in the face of its own medical evidence and examination opinions is an inconsistency for the VA to justify and resolve, not the Commissioner." Dkt. 17, at 14 (emphasis in original). But the fact that the Commissioner believes the VA's decision was not supported by the medical evidence does not somehow excuse the ALJ from the requirement that he provide persuasive, specific, and valid reasons for discounting that decision.

Because the ALJ failed to even acknowledge much less discuss Orsborn's 100% VA disability rating, this case should be remanded for further proceedings. On remand, the Commissioner should consider the VA's disability rating and, if he chooses not to accept that rating, explain his reasoning as required by the Ninth Circuit in *McCarty*.

## IV. <u>Conclusion</u>

For all of the above reasons,

IT IS RECOMMENDED that Orsborn's motion for summary judgment be

granted, the Commissioner's motion for summary judgment be denied, and the Commissioner's decision be reversed. This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 24th day of August, 2012.

_____
Jeremiah C. Lynch
United States Magistrate Judge